**E-FILED**
Friday, 11 December, 2015  03:23:02 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

EMILY YOUNG                              )
                                      )
                                       )  Case No. 15-cv-2296
              Plaintiff,          )
                                         )
v.                                       )
                                         )  JURY TRIAL DEMANDED
CATERPILLAR, INC.;                       )
                                         )
              Defendant.          )
                                         )
_____  )

## COMPLAINT

**NOW COMES** the Plaintiff, Emily Young ("Young" or "Plaintiff), by and through her attorneys, Pavía & Lázaro, LLC and for her Complaint against Caterpillar, Inc., ("Caterpillar") states as follows:

## NATURE OF ACTION

This action challenges pervasive sexual harassment and discriminatory practices at the Decatur, Illinois Caterpillar manufacturing plant.  While employed by Caterpillar, Plaintiff was subjected to sexual harassment, gender discrimination and retaliation based on her sex and her opposition to the harassment and discrimination she suffered.

## JURISDICTION AND VENUE

1.  Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964. Jurisdiction of this Court is invoked pursuant to 28 U.S.C §§ 1331 and 1343.

2.  Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. § 1391(b).  Defendant's unlawful conduct took place within the jurisdiction of this Honorable Court.

3.      Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue, thereby fully complying with the procedural requirements under Title VII.

4.      On April 21, 2014, the EEOC issued a determination and found reasonable cause to believe that Caterpillar discriminated and retaliated against Young based on her sex and for engaging in protected activity.    More specifically, the EEOC found reasonable cause to believe that Young suffered discrimination and retaliation when Caterpillar subjected her to harassment, different terms and conditions of employment, discipline, demotion, suspension, and discharge in violation of Title VII.

5.      During the course of the EEOC's investigation several men came forward and testified that Young had been subjected to discrimination, harassment, and retaliation based on her sex and her opposition to Defendant's discriminatory behavior.

6.      One of these men has agreed to make his declaration form part of the official record with this Court.  Accordingly, plaintiff attaches his declaration as Exhibit A of this Complaint.   See Exhibit A. Tatum's Declaration.

**PARTIES**

7.      Young is a former Salvage Welder of Caterpillar's Decatur Manufacturing Plant.  She resides in this judicial district.

8.      At all relevant times, Defendant Caterpillar has continuously been a corporation doing business in the State of Illinois.  Caterpillar is engaged in the business of manufacturing construction and mining equipment.  Caterpillar's Decatur Illinois plant is responsible for manufacturing Caterpillar's largest mining and construction equipment. Caterpillar employs more than 20,000 employees in the State of Illinois.

## FACTUAL ALLEGATIONS

### *Defendant engaged in Pervasive Sexual Harassment, Gender Discrimination, and Retaliation against Young*

9.    Young worked for Caterpillar's Decatur Manufacturing plant from September 2005 through May 2013.

10.    During Young's employment, Defendant engaged in a pattern of discriminatory conduct against females which includes, but is not limited to:

   a.  Demeaning, humiliating and intimidating its female employees and creating a hostile and offensive work environment;

   b.  Placing equally qualified females in lower paying jobs;

   c.  Negligently retaining men with known propensities to discriminate or sexually harass women;

   d.  Making employment decision based on sex and taking sex into consideration when making employment decisions;

   e.  Taking disciplinary actions against females under false pretenses;

   f.  Treating male employees better than female employees in many aspects of employment;

   g.  Refusing to take adverse actions against male workers who engaged in sexual harassment and sexual discrimination.

11.    Complicit in Defendant's discrimination and retaliation is its human resources department, which is ineffective at resolving complaints of gender discrimination and sexual harassment.  Defendant's human resources team defends discriminators and harassers and does not take adequate steps to prevent retaliation against female employees who lodge complaints.

12.    The work environment at the Decatur plant is highly male dominated. Whereas men hold the sheer majority of higher-level positions, women are relegated to lower paying and less prestigious jobs.

13.    Caterpillar first hired Young as a forklift driver. She became a Welder in April 2006.

14.    The forklift driver position is one of the lowest paying positions at the Decatur plant. Consistent with its pattern of discrimination, many female employees are relegated to the forklift driver position. Additionally, the majority of female employees in the Decatur plant work in assembly rather than welding/fabrication, even though welding/fabrication positions pay more than assembly positions.

15.    During her time at Caterpillar, Young was the victim of Defendant's pervasive sexual discrimination, harassment and retaliation.

16.    At Caterpillar, Young was constantly exposed to sexual innuendos and comments on her appearance and body parts.   Employees would whistle at her when she bent over to weld or when she took off her protective gear, told her "damn baby you look good in those chaps" (meaning the protective gear she wore for welding), asked her "what's underneath those chaps" and made other sexual jokes and propositions.

17.    Employees also called Young a "bitch" and a "fucking cunt."   One employee went as far as writing a note to Young stating that he "would spank her."

18.    Employees would also make repeated references to the movie flash dance (which represents a welder who is also an exotic dancer and has numerous sexually explicit scenes) and dirty dancing.  Employees made comments to Young concerning

how they "would like to see her like the movie flashdance" and that flashdance "was a nice set-up" or words to that effect.

19.     On occasions, Young was called over by men over the radio only to be met with comments such as "we just wanted to check you out" or words to that effect.

20.     Young was also exposed to hard-core pornographic materials and demeaning comments over the radio.  The pornographic material was in plain view of managerial personnel – including her direct supervisors.

21.     The sexually charged and demeaning behavior was commonplace, transpired on a daily basis, and was on plain view of managerial personnel.

22.     Young made numerous complaints to Human Resources and her supervisors including but not limited to Clint Mittelsteadt ("Mittelsteadt"), Ryan Bright, Joel Camacho ("Camacho") and Gary Breazille ("Breazille").  Yet, Caterpillar failed to take any appropriate steps aimed at ensuring a safe and harassment free environment.

23.     In 2009, Young was sexually assaulted at the plant by an employee by the name of Brent Joseph ("Joseph").  Joseph was part of Caterpillar's 'boy's club' and was friendly with supervisors and management.

24.     For months Joseph would go around the plant showing his buttocks to other employees, including Young and other female workers. This behavior was well known, yet Caterpillar took no action to stop it.

25.     Inasmuch as Caterpillar failed to stop the behavior, Joseph felt free to augment his sexually charged conduct.  He played a game that men called the "buckle game" where he would go around the plant with his pants down and a long shirt covering his genitals.  He would then approach other employees, including female workers and

Young, would move his shirt up, and ask them whether they would like to look at his buckle, thus exposing his genitals.

26.    For months, the buckle game occurred almost on a daily basis and was well known throughout the plant, yet it went un-remedied.

27.    The harassment against Young resulted in a sexual assault.  On or about March of 2009, Joseph approached Young while she was bending down and proceeded to hit Young's buttocks with his exposed penis.

28.    Young took the matter to the local Police and filed a police report with the City of Decatur Police Department.  The police proceeded to arrest Joseph who did not return to work.

29.    The sexual assault and other sexually charged behavior on the part of Joseph could have been avoided had Caterpillar taken effective measures to stop the harassment and other sexually charged behavior on a timely basis.

30.    After the assault, Young was ostracized and suffered retaliation on the part of her co-workers and managers as a result of her opposition to the harassment.

31.    The retaliation and harassment suffered by Young worsened when in the later part of 2011 she ousted a man from a position that rightly belonged to her.

32.     In September of 2011, Young placed a bid for the Salvage Welder position.

33.    Salvage Welders are the elite group of welders at the Decatur plant.

34.    Young was first informed that she had won the bid and that she could pass to the testing phase of the bidding process.

35.    Nevertheless, when she reported to welding school, she was told that the bid was awarded to a male employee by the name of Nathan Hoenes.  ("Hoenes")

36.    Hoenes and other men had gone to Human Resources and protested that the bid should be given to Hoenes rather than Young.

37.    Hoenes had a friendly relationship with management and other welders including Mittelsteadt, who in his role as Operations Supervisor would later supervise Young.

38.    As a further act of discrimination, the bid was taken away from Young and awarded to Hoenes even though Hoenes had no right to the bid.

39.    Young protested and complained to Human Resources (Stephanie White) and management that the bid rightly belonged to her.  Her pleads were ignored.  Human Resources expressed sympathy for Young but expressed that she was ordered to give the bid to Hoenes.

40.    Consequently, Young had to resort to filing a grievance with the union.

41.    Even on the face of the grievance and clear language in the union agreement that showed that the bid belonged to Young, Caterpillar resisted awarding the bid to Young.

42.    Young, however, insisted and eventually won the grievance.  She was subsequently awarded the bid.

43.    In October of 2011, Young took the Salvage Welding test.

44.    Young was the first female to ever pass the salvage welding test and the first and only female at the Decatur plant to hold the Salvage Welder position.

45.    Unfortunately, Young suffered further discrimination, harassment, and retaliation for ousting Hoenes from the bid that rightly belonged to her.

46.    After Young became a Salvage Welder, Caterpillar failed to provide Young with the necessary training and other assistance that men in the Salvage Welder position routinely received.

47.    Caterpillar also failed to provide Young with the necessary tools she needed to effectively do her job.

48.    Contrary to the men who held the Salvage Welder position, Young was not assigned a cart of tools by which she could carry out her salvage welding duties. Young was the only salvage welder who had no cart assigned to her.

49.    In addition, unlike men who held her position, Young was the only one who was supervised by an individual – Camacho -- who wasn't even a welder and thus could not provide her with basic support to effectively carry out her responsibilities.

50.    Men repeatedly told Young that "she did not deserve that job," that "this little girl wants to be a Salvage Welder" or words to that effect. Several men expressed that the salvage welding was a "man's job." Mittelsteadt expressed his displeasure at having Young hold the Salvage Welder position.

51.    Young's co-workers also purposefully took actions that disallowed Young access to the cart of tools that she needed to do her job.

52.    On numerous occasions they changed the combination that would allow access to the cart. Young's co-workers then went as far as welding a bar on the cart so as to disallow Young access to the tools that she needed to do her job.

53.   On numerous occasions Young complained to her supervisors concerning the harassment, her lack of tools, training and support.

54.   For example, Young specifically told Camacho that she thought her co-workers were angry because she took away the job of a man and they were closing in on her and disallowing her from doing her job or words to that effect.  Young additionally informed Mittelsteadt and Breazille of the harassment she was being subjected to, but they ignored Young's pleads for help, and laughed it off.

55.    Even though Caterpillar failed to provide Young with the necessary tools and training she needed to effective perform her job duties, it then took disciplinary action against Young based on the alleged fact that Young wasn't appropriately doing her job.

56.   From the time Young was hired in 2005 until January 2012 she had no significant disciplinary issues.  In more than six years of employment, Young received only two verbal warnings.

57.   After Young ousted a man from the Salvage Welder position, she all of a sudden became a terrible worker who was 'dishonest,' didn't turn her paperwork on time, and did not weld correctly.

58.    As a Salvage Welder, Young was disciplined for reasons that men were not disciplined for even though they engaged in the same or similar behavior. See Ex. A.

59.   Young was repeatedly disciplined for welding mistakes, while male Salvage Welders were not disciplined for making the same or similar mistakes.  See Ex. A.

60.     Male Salvage Welders were routinely given the opportunity to fix welding mistakes, were helped by other men to fix welds, while Young was not helped and was disciplined for minor mistakes.   See Ex. A.

61.     Male Salvage Welders routinely did not turn in their paperwork on time and were not disciplined, while Young was disciplined for allegedly not turning in her paperwork on time.  See Ex. A.

62.     Moreover, Young was suspended for allegedly being on Facebook, while men routinely used Facebook and engaged in other activities that were not work related, but were not disciplined.

63.     On more than one occasion, Young complained to Human Resources concerning the discrimination she was receiving.

64.     Because Caterpillar's Human Resources department did not take proper steps to enforce its anti-discrimination policy and provide a harassment free workplace, Young filed an EEOC charge on November 28, 2012 and filed an amended charge on December 6, 2012.

65.     It was well known throughout the Decatur plant that Young had filed an internal complaint with Human Resources and with the EEOC. See Ex. A.

66.     In fact, as part of its purported investigation into Young's allegations, in the later part of July 2012 Caterpillar's Human Resources' personnel informed Mittelsteadt and other supervisors that Young had complained.

67.     In the span of a little over two months after Young's internal complaint, Mittelsteadt and other supervisors then took further retaliatory and discriminatory acts

against Young in the form of further discipline including a three-day suspension on August 21, 2012 and a demotion for alleged welding issues on October 5, 2012.

68.     Ultimately, the retaliation and discriminatory conduct culminated in Young's termination.

69.     The reason provided for the termination – that Young had allegedly failed to wear gloves while operating a crane/touching a plate – is a pretext for discrimination and retaliation.

70.     At Caterpillar, men regularly did not wear gloves while operating a crane or when touching a plate and were not disciplined. See Exb. A. Yet, Young was terminated for this infraction and as a result of the cumulative effect of other alleged disciplinary infractions that were given to her for pretextual reasons.

71.     Young was walked out indefinitely from her job on April 5, 2015 – less than four months after she had filed her amended charge alleging that her supervisor was retaliating against her.

### Other Evidence of Unlawful Behavior

72.     Out of the six women reporting to Mittelsteadt since October of 2011, only two are currently employed.  Upon information and belief, this contrasts sharply with the men that Mittelsteadt supervised in that same timeframe.

73.     This is not the first time that Defendant has faced allegations of discrimination and retaliation against females.

74.     In 2003, the EEOC charged that Caterpillar engaged in a pattern and practice of gender discrimination, sexual harassment and retaliation against a class of female employees. *EEOC v. Caterpillar*, 03-Cv-5636 (N.D. Ill).

75.     In that case, Judge Pallmeyer from the Northern District of Illinois wrote a 81 page opinion in which she held that there was evidence that Caterpillar ignored complaints of harassment because, as Young claims here, "it is undisputed that the individual at Defendant's Labor Relations department to whom [one of the plaintiffs in the case] complained to did nothing in response" to the complaints of harassment.

## FIRST CAUSE OF ACTION
## TITLE VII – SEXUAL DISCRIMINATION

76.     Plaintiff incorporates the preceding paragraphs as if alleged herein.

77.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended by the Civil Rights Act of 1991,  ("Title VII") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

78.     The above facts taken by Defendant amount to discrimination based on sex in violation of Title VII.

79.     Despite Defendant's knowledge of the harassment toward Plaintiff, it failed to take any appropriate action to prevent or correct the discriminatory work conditions imposed on Plaintiff.

80.      Accordingly, Plaintiff alleges differential treatment and hostile work environment theories of liability under Title VII.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF 42 U.S.C. § 2000

81.     Plaintiff incorporates the preceding paragraphs as if alleged herein.

82.    Title VII makes it unlawful for an employer to retaliate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

83.    Plaintiff complained of sex discrimination and harassment both internally and to the EEOC.

84.    Defendant retaliated against Plaintiff for her complaints in violation of Title VII. By its conduct, Defendant retaliated against Plaintiff in violation of Title VII.

### THIRD OF ACTION
### ILLINOIS HUMAN RIGHTS ACT – SEXUAL DISCRIMINATION

85.    Plaintiff incorporates the preceding paragraphs as if alleged herein.

86.    The Illinois Human Rights Act, as amended, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

87.    Despite Defendant's knowledge of the harassing treatment toward Plaintiff, it failed to take any appropriate action to prevent or correct the discriminatory work conditions imposed on Plaintiff.

88.    Accordingly, Plaintiff alleges differential treatment and hostile work environment theories of liability under the Illinois Human Rights Act.

89.    By its conduct described herein, Defendant subjected Plaintiff to sexual discrimination in violation of the Illinois Human Rights Act.

### FOURTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

90.    Plaintiff incorporates the preceding paragraphs as if alleged herein.

91.     The Illinois Human Rights Act makes it unlawful for an employer to retaliate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employer's claim of discrimination.

92.     Plaintiff complained of sex discrimination and harassment.

93.     Defendant retaliated against Plaintiff for her complaints in violation of the Illinois Human Rights Act.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment in her favor and against Defendant, and enter an Order awarding the following relief:

a.     All wages and benefits they would have received but for the discrimination;

b.     Compensatory damages;

c.     Punitive damages;

d.     An award of costs, as provided by F.R.C.P. 54(d)(1);

e.     An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k); and

f.     Such other relief as the Plaintiff may be entitled to under Title VII and any other statute or which the Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal

Rules of Civil Procedure.

Dated: December 11, 2015                    Respectfully Submitted,

                                            Pavía & Lázaro, LLC


                                            /s/ Rafael E. Lázaro
                                            /s/ Juanita B. Rodríguez
                                            321 S. Plymouth Court, Suite 1250
                                            Chicago, Illinois 60604
                                            (312) 461-9900;
                                            (773) 305-4068 (fax)
                                            rlazaro@pavialazaro.com